In re William M. GURLEY, Debtor.

George E. Mills, Jr., Chapter 7 Trustee, Plaintiff,

v.

Betty Jean Gurley, Defendant.

Bankruptcy No. 6:95–bk–03833–ABB.

Adversary No. 6:96–ap–00159–ABB.

United States Bankruptcy Court, M.D. Florida, Orlando Division.

June 6, 2007.

James E. Foster, Akerman Senterfitt, Orlando, FL, for Plaintiff.

## ORDER

ARTHUR B. BRISKMAN, Bankruptcy Judge.

This matter came before the Court on the Interim Partial Contingent Fee Application of James A. Foster and Foster & Kelley, P.A.[1] Re: Adversary Proceeding Number 96–00159[2] ("Adversary Fee Application")[3] and the Amendment to Amended Final Application ("General Fee Application")[4] filed by James A. Foster ("Foster") and Akerman Senterfitt, collectively the Applicant herein ("Applicant").[5] A hearing was conducted on May 24, 2007 and counsel for George E. Mills, Jr., the Trustee (herein "Trustee"); the Trustee; counsel for the Applicant; counsel for the United States Environmental Protection Agency (the "EPA"); counsel for the Debtor (William Gurley, herein "Debtor"); counsel for Cheryl Followell (herein "Followell"), acting as Personal Representative of the Estate of Betty Jean Gurley (deceased); and counsel for the estate of Betty Jean Gurley (herein "Betty Gurley") were present. The Court requested the Applicant and Counsel for the EPA to submit their final position for the Application.[6]

The Court makes the following Findings of Fact and Conclusions of Law after reviewing the pleadings and evidence, hearing live testimony and argument, and being otherwise fully advised in the premises.

1. Foster is no longer employed by Foster & Kelley, P.A. He is a shareholder and partner of Akerman Senterfitt. An Application for employment of Akerman Senterfitt was granted (Doc. No. 41).

2. *George E. Mills, Jr. v. Betty Jean Gurley,* Case No. 96–00159–ABB.

3. Doc. No. 207. The Adversary Fee Application will be treated as an interim application and the Applicant will be entitled to further fees if it is required to perform more services on behalf of the Trustee.

4. Doc. No. 376: filed as an addendum to the Amended Final Application for Allowance and Payment of Compensation and Reimbursement of Expenses by Counsel for the Trustee for Unbilled Time from June 1, 2006 Through March 31, 2007 (Exhibits Attached to Docket No. 369) (Doc. No. 373), which amended the Final Application for Allowance and Payment of Compensation and Reimbursement of Expenses by Counsel for the Trustee for Unbilled Time from June 1, 2006 through March 31, 2007 (Doc. No. 369).

5. Applicant is also requesting the Court award the balance of the fees sought in the Tenth Application (Doc No. 285), Supplements of $109,795.50, the balance of fees sought in the Eleventh Interim Application of $2,837.25; and the estimated $25,000.00 in fees and costs to conclude the case.

6. Doc. Nos. 379 & 381 were filed by Richard Gladstein on behalf of the EPA and James E. Foster respectively.

## FINDINGS OF FACT

### Case Background

The Debtor filed an individual Chapter 7 bankruptcy case on July 26, 1995 ("Petition Date"). The Debtor's bankruptcy initially appeared to be a no-asset case and the EPA was his single largest creditor. The Trustee's Application[7] for employment of Applicant as general counsel to assist the Trustee in discharging his statutory duties in the administration of the Debtor's estate was granted on October 13, 1995.[8] The Trustee discovered the Debtor's wife, Betty Gurley, owned significant assets which could potentially be property of the Debtor's estate and submitted a second Application ("Application II") for the employment of Applicant as special counsel.[9] An Order ("Order") authorizing the employment of Applicant on behalf of the Trustee was issued on March 7, 1996.[10]

### General Fee Application

The Applicant submitted the General Fee Application seeking payment for services rendered in administering the Debtor's estate as general counsel. Applicant is requesting payment for his services rendered from June 1, 2006 through March 31, 2007 (herein "Application Period"). Betty Gurley filed a Chapter 11 bankruptcy case in the Bankruptcy Court for the Western District of Tennessee ("Tennessee Court"), and Cheryl Followell, the Gurley's daughter and representative of Betty Gurley's estate, filed the adversary proceeding *Cheryl Followell v. George Mills*, Case No. 04–00335, in the Tennessee Court, where an appeal is pending. The Applicant has been actively involved in this adversary proceeding.

Applicant's General Fee Application requests compensation of $31,414.00 and expenses of $1,333.35 for the Application Period; the balance of fees sought in the Tenth Application and Supplements of $109,795.50; the balance of fees sought in the Eleventh Interim Application of $2,837.25; and the estimated $25,000.00 in fees and costs to conclude the case.[11] The General Fee Application seeks $169,046.75 fees and $1,333.35 costs, for a total of $170,380.10.

Applicant has received $1,213,185.68[12] in fees and $185,512.66 in expenses as of August 21, 2006. The average hourly rate for the attorneys and paralegals for services during the Application Period is $273.63. Applicant performed services on behalf of the Trustee totaling 131.50 hours during the Application Period. All charges and services rendered are at the hourly rates that Applicant customarily bills and receives from other bankruptcy clients for similar services.

Applicant is entitled to these fees and expenses for his performance on behalf of the Trustee. The hours and rates of the Applicant are reasonable. He has rendered significant services in the Debtor's bankruptcy case for over a decade. The Trustee reviewed and approved of Applicant's General Fee Application. His General Fee Application is due to be granted.

---

7. Doc. No. 11.

8. Doc. No. 13.

9. Doc. No. 23: Application for Employment of Special Counsel to Trustee on an Enhanced Fee Basis and Declaration of Attorney.

10. Doc. No 24.

11. The balances requested from the Tenth and Eleventh Applications, including the Supplements, are amounts previously requested which have been held back. The $25,000.00 in fees and costs to conclude the case is subject to future fee applications.

12. This sum includes fees and expenses paid to Foster & Kelly, Foster's former employer.

### The Gurley Adversary

The Trustee sought employment of the Applicant, as special counsel, to represent him in the fraudulent transfer adversary proceeding (the "Gurley Adversary"). Applicant initiated the Gurley Adversary against Betty Gurley immediately following the grant of Application II. Contentious litigation ensued and is still pending, eleven years after the Gurley Adversary was filed. Betty Gurley filed three unsuccessful appeals, in an attempt to have a judgment overturned, which held the assets allegedly owned by her were property of the Debtor's estate. The United States Supreme Court ultimately denied her petition for certiorari.

The Applicant was crucial in administering and recovering assets of the Debtor's estate. The Trustee, with Applicant's exceptional representation in the bankruptcy case and the Gurley Adversary, recovered $28,748,451.34. The case was initially a no-asset case. The results achieved are extraordinary and the Applicant's representation has been exceptional.

### Adversary Fee Application

Application II was based upon a fee arrangement between the Trustee and Foster with the EPA's awareness and consent.[13] Application II contained the following provision concerning the Applicant's attorney fees:

> [I]f any monies or property are received by the estate, then the trustee believes, and the EPA, the single largest creditor concurs, that applicant should receive reimbursement for all expenses incurred and, as his fee, an amount equal to double counsel's hourly rate or ten (10%) percent of any monies or the value of any property received or recovered by,

or paid to the estate, whichever is greater.[14]

The Trustee thought this contingency fee arrangement was appropriate considering the time and effort anticipated to be involved in the litigation and the significant risk there may be no recovery. There were no assets initially available for payment of legal fees.

The Order authorizing employment of Applicant as special counsel concluded:

> [t]he court is not opposed to awarding the fees suggested by the EPA and the trustee as an inducement to counsel to undertake this representation, and the court recognizes that counsel would not be willing to undertake that representation absent the consent of the EPA and the trustee of this fee arrangement. Accordingly, the application is GRANTED in part ... however, the court does not believe it appropriate to pre-determine the amount of the fees to be awarded to counsel at this time.[15]

The Applicant submitted the Adversary Fee Application requesting an award of fees, contingent on the total amount recovered in the Gurley Adversary, consistent with the Order granting Application II. Applicant suggests his efforts exceed the value of the agreed upon ten percent (10%) and asserts "that a reasonable fee for the extraordinary risks he and his firm undertook and the extraordinary results achieved would exceed the baseline fee of 10% ..."[16]

Applicant requests a fee of twenty-five percent (25%) of the recovered funds and a baseline fee of five percent (5%), for each of the three appeals. The Applicant states, an award of only 10% "would ignore

---

13. Ex. Nos. 1 & 2.

14. *Id.* at pp. 1–2.

15. *Id.*

16. Doc. No. 207 at p. 22.

the significant benefit Applicant has conferred, the substantial certainty that the amount recovered greatly exceeds all valid claims and the length of time Applicant has been the creative and motive [*sic*] force in obtaining this outcome." [17]

The Applicant, in his May 29, 2007 letter ("Final Letter"), requested fifteen percent (15%) of the total recovery, less the amount paid for the trial and three appeals of the Gurley Adversary.[18] The EPA requested in their May 25, 2007 letter a contingency fee award of $2,324,316.00 ($2,874,845.13 (10% of $28,748,451.34) less $550,529.00 (their calculation of adversary fees paid)).[19]

Several objections (collectively "Objections") were filed in response to the Adversary Fee Application.[20] The Debtor, Betty Gurley, and Cheryl Followell object on several grounds, including: (1) the Adversary Fee Application fails to meet the requirements of 11 U.S.C. Section 330 because no time entries were submitted, (2) application of the Lodestar approach is the appropriate measure for determining reasonable compensation as opposed to the contingency fee sought by the Applicant, (3) the Applicant's fee request is excessive in nature, and any determination of the Adversary Fee Application would be premature based on pending and potential litigation. Cheryl Followell filed a Motion seeking a stay of the Adversary Fee Application, until a pending appeal of the Tennessee Court is final.[21]

Each of the Objections is due to be overruled and Followell's Motion denied. The Applicant earned the fees requested and should be awarded on an interim basis. He was engaged with the possibility of receiving no benefit, if a recovery was not achieved. This was a unique case with a remarkable outcome. Applicant risked his financial stability and applied considerable professional services to achieve the extraordinary result. He performed his professional representation with exceptional aptitude and persistence. The quality of Applicant's services was superior and the results were exceptional by any standard.

The ordinary and customary fee for representation of complex commercial litigation can exceed forty-percent (40%). The Applicant is entitled to the requested award of fifteen percent (15%) of the total recovery.

Applicant is awarded $4,312,267.70, either as a 15% contingency fee or as a Lodestar fee with an enhancement. Applicant has received $192,917.00 for work performed in the adversary proceeding, based upon the Lodestar method, calculating the reasonable hours and rates, provided in previous fee applications.

## CONCLUSIONS OF LAW

### General Fee Application

The Applicant submitted the General Fee Application requesting payment for services rendered in administering the Debtor's estate as general counsel pursuant to 11 U.S.C. Section 331. Section 331 provides for interim compensation of any professional person. The Applicant is requesting payment for its services rendered from June 1, 2006 through March 31, 2007.

17. *Id.* at p. 24.

18. Doc. No. 381.

19. Doc. No. 379.

20. Doc. No. 233 filed by Betty Jean Gurley; Doc No. 362 filed by Cheryl Followell; and Doc. No. 366 filed by the Debtor and Cheryl Followell.

21. Doc. No. 53 in adversary proceeding 06-00159.

Applicant has received $1,213,185.68 in fees and $185,512.66 in expenses as of August 21, 2006. Applicant has put forth significant efforts representing the Trustee in the adversary proceeding commenced by Cheryl Followell in the Tennessee Court. An appeal is currently pending.

■ Section 330(a)(1)(A) provides for "reasonable compensation for actual, necessary services" rendered by a professional person employed pursuant to Section 327. 11 U.S.C. § 330. The reasonableness of attorney fees and costs is determined by an examination of the criteria enunciated in *In the Matter of First Colonial Corp. of America* [22] and *Johnson v. Georgia Highway Express, Inc.* [23] *First Colonial* states:

> In order to establish an objective basis for determining the amount of compensation that is reasonable for an attorney's services, and to make meaningful review of that determination possible on appeal, we held in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d at 717–19, that a district court must consider the following twelve factors in awarding attorneys' fees ...

*First Colonial* at 1299.

■ Applicant is requesting compensation of $31,414.00 and expenses of $1,333.35 for the Application Period; the balance of fees sought in the Tenth Application and Supplements of $109,795.50; the balance of fees sought in the Eleventh Interim Application of $2,837.25; and the estimated $25,000.00 in fees and costs to conclude the case. He requests $169,046.75 fees and $1,333.35 costs, for a total of $170,380.10. The fees sought by Applicant are reasonable after consideration of the First *Colonial* and *Johnson* factors and all of the facts and circumstances of this case.

### Adversary Fee Application

■ The Trustee, with the consent of the EPA, engaged the Applicant's services on a contingency basis. The Trustee and the Applicant deemed this fee arrangement appropriate considering the possibility of complex litigious litigation. Application II does not specifically seek fees pursuant to 11 U.S.C. Section 328, but the terms of the agreement are consistent with this provision, which does not apply the Lodestar approach. 11 U.S.C. Section 328 of the Bankruptcy Code provides:

> The Trustee ..., with the court's approval, may employ or authorize the employment of a professional person under section 327 ... of this title ... on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light

**22.** *In the Matter of First Colonial Corp. of America*, 544 F.2d 1291 (5th Cir.1977).

**23.** *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; (12) awards in similar cases. *Johnson* at 714.

of developments not capable of being anticipated at the time of the fixing such terms and conditions.

11 U.S.C. § 328. A professional, when seeking a fee arrangement pursuant to Section 328, may avoid the potential limitations of what constitutes "reasonable compensation" pursuant to Section 330 by obtaining court approval of compensation agreed to with the trustee. *Donaldson Lufkin & Jenrette Securities Corp. v. National Gypsum Co.,* 123 F.3d 861, 862 (5th Cir.1997).

"If prior approval is given to a certain compensation, § 328 controls and the court starts with that approved compensation, modifying it only for developments unforeseen when originally approved. If the most competent professionals are to be available for complicated capital restructuring and the development of successful corporate reorganization, they must know what they will receive for their expertise and commitment."

*Id.* at 862–63.

The engagement of Applicant on a contingency basis was contemplated in the Order approving Application II. The arrangement is appropriate considering the financial risks initially involved and the litigiousness of the proceedings, which have continued for more than a decade. Foster was initially a partner of a small firm that did not have the financial capabilities or staff to prosecute a case this litigious and complicated. A contingency fee arrangement is appropriate based upon these circumstances.

■■ The Court is not bound by the agreed upon or any percentage, but this was an unusual case with an exceptional result. A reasonable contingency fee is derived from the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably compa-

rable skills, experience, and reputation. Stated differently in *Johnson,* a court should consider the customary fee for similar services in the community. *Johnson,* 488 F.2d at 718. An award of 15% of the recovery is considerably less than the prevailing market rate in the relevant legal community for complex commercial litigation. Applicant is awarded $4,312,267.70 (15% of $28,748,451.34).

■ Section 330(a)(1) (*supra*) could be applied to the Adversary Fee Application with a fee enhancement. A compensation award made pursuant to *First Colonial* and *Johnson* factors may be adjusted upward or downward, in exercise of the court's discretion, where "the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success was 'exceptional.'" *Blum v. Stenson,* 465 U.S. 886, 900, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *see also Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Norman v. Housing Auth. of Montgomery,* 836 F.2d 1292, 1306 (11th Cir.1988); *In re Gencor Indus., Inc.,* 286 B.R. 170, 179 (Bankr. M.D.Fla.2002) (holding "fee enhancements are allowed and should be encouraged where the attorney's initiative, perseverance, and skill lead to an extraordinary success quickly, efficiently, and effectively."). The applicant carries the burden of establishing an upward adjustment is appropriate. *Blum v. Stenson,* 465 U.S. at 901–02, 104 S.Ct. 1541.

The case was initially a no asset case and the Applicant had no assurance of payment of his fees and expenses. The case involved distinctive facts and legal issues. Applicant maintained a high level of skill and creativity; his efforts produced extraordinary success, efficiently and ef-

fectively. The quality of Applicant's services was superior and the results were exceptional. An entitlement to a fee enhancement has been established.

This was a unique case with exceptional results rarely achieved in complex commercial litigation. Applicant's efforts greatly enhanced the value of the estate. Significant efforts were required in administering and recovering assets of the Debtor's estate and the results achieved are extraordinary. The Applicant performed his representation exceptionally.

Applicant is entitled to an award of $4,312,267.70 pursuant to Section 330, in consideration of the *First Colonial* and *Johnson* factors, and the facts and circumstances. Applicant was awarded $192,917.00 based upon previous fee applications and the Lodestar method, based upon the reasonable hours and rates. He is due to receive $4,119,350.70.

Accordingly, it is

**ORDERED, ADJUDGED AND DECREED** that the General Fee Application (Doc. No. 376) is hereby **GRANTED** and Applicant, James E. Foster and the firm of Akerman Senterfitt, is awarded $169,046.75 for fees and $1,333.35 for costs, for a total of $170,380.10; and it is further

**ORDERED, ADJUDGED AND DECREED** that the Adversary Fee Application (Doc. No. 207) is hereby **APPROVED** and the Applicant, James E. Foster and the firm of Akerman Senterfitt, is awarded fees of $4,312,267.70 for services performed as special counsel to the Trustee. Applicant has received $192,917.00 and is entitled to an additional $4,119,350.70; and it is further

**ORDERED, ADJUDGED AND DECREED** that these awards on an interim basis are subject to change if further services are provided on behalf of the Applicant.